POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (212) 661-8665
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DREW DEPOY, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> STABLE ROAD ACQUISITION CORP., MOMENTUS INC., SRC-NI HOLDINGS, LLC, BRIAN KABOT, JAMES NORRIS and MIKHAIL KOKORICH, <br><br> Defendants. | Case No.: <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Drew DePoy ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings by Stable Road Acquisition Corp. ("Stable Road" or the "Company"), wire and press releases, analysts' reports, and advisories published by and regarding the Company and Momentus Inc. ("Momentus"), and information readily obtainable on the Internet.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## <u>NATURE OF THE ACTION</u>

1.     This is a federal securities class action brought on behalf of all purchasers of Stable Road securities (the "Class") between October 7, 2020 and July 13, 2021, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

1

## **JURISDICTION AND VENUE**

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

4.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).   Stable Road is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

5.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## **PARTIES**

6.     Plaintiff Drew DePoy, as set forth in the attached certification, acquired Stable Road securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

7.     Defendant Stable Road is a special purpose acquisition company, or

2

"SPAC."  The Company maintains its principal executive offices in Venice Beach, California.  Stable Road Class A common stock, warrants and units trade on the Nasdaq Global Select Market ("NASDAQ") under the symbols "SRAC," "SRACW" and "SRACU," respectively.

8.   Defendant Momentus was an acquisition target of Stable Road during the Class Period.  It is a private commercial space company headquartered in Santa Clara, California.

9.   Defendant SRC-NI Holdings, LLC ("Sponsor") served as the SPAC Sponsor of Stable Road during the Class Period.

10.   Defendant Brian Kabot ("Kabot") served as Chief Executive Officer ("CEO") and Chairman of Stable Road during the Class Period.

11.   Defendant James Norris ("Norris") served as Chief Financial Officer ("CFO") of Stable Road during the Class Period.

12.   Defendant Mikhail Kokorich ("Kokorich") founded and served as CEO of Momentus during the Class Period, until his resignation in January 2021.

13.   Defendants Kabot, Norris and Kokorich are collectively referred to hereinafter as the "Individual Defendants."  Because of the Individual Defendants' executive positions, they each had access to the undisclosed adverse information about Stable Road's and Momentus's business, operations, products, and present and future business prospects via internal corporate documents, conversations and connections with

other corporate officers and employees, and attendance at management and Board of Directors meetings and committees thereof.

14.    Each of the Individual Defendants was directly involved in the management and day-to-day operations of the Company and/or Momentus at the highest levels and was privy to confidential proprietary information concerning Stable Road and Momentus.  In addition, the Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware of, or recklessly disregarded, the false and misleading statements being issued regarding the Company and Momentus, and approved or ratified these statements, in violation of the federal securities laws.

15.    The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company and Momentus, were able to, and did, control the content of the various SEC filings, press releases, and other public statements pertaining to the Company and Momentus during the Class Period.  Each Individual Defendant was provided with copies of the documents alleged herein to be misleading before or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected.  Accordingly, each Individual Defendant is responsible for the accuracy of the public statements detailed herein and is, therefore, primarily liable for the representations contained therein.

## SUBSTANTIVE ALLEGATIONS

16.  Stable Road is a blank check company.  A blank check company is sometimes referred to as a special purpose acquisition vehicle, or "SPAC," and does not initially have any operations or business of its own.  Rather, it raises money from investors in an initial public offering and then uses the proceeds from the offering to acquire a business or operational assets, usually from a private company that does not publicly report financial or operating results.  As a result, investors in blank check companies rely on the skill, transparency and honesty of the blank check company's sponsor to spend the offering proceeds to acquire a fundamentally sound target company that offers attractive risk-adjusted returns for investors.

17.  In November 2019, the Sponsor and Defendants Kabot and Norris took Stable Road public via an initial public offering (the "IPO").  While Stable Road did not identify any target companies at the time of the IPO, the IPO offering materials stated that the Company planned to pursue an acquisition focused in the cannabis sector.  IPO offering materials claimed that the Sponsor and Stable Road management, including Defendants Kabot and Norris, would "[c]onduct rigorous due diligence" of any target possibilities, "including a review of company-specific information as well as an analysis of the overall industry and competitive landscape."

18.  The IPO offering materials provided "Acquisition Criteria" that would purportedly be used to evaluate target companies by the Sponsor and Stable Road

executives, which included the following:

- Operates adjacent or ancillary to the cannabis industry, but does not "touch the plant" and complies with all U.S. federal laws;

- Is highly scalable;

- Has strong intellectual property including brands, technology, software, methods, etc.;

- Has an institutional mindset/infrastructure;

- Has a strong professional management team with deep networks within the cannabis sector and the ability to adapt to a quickly changing business environment;

- Has potential to achieve significant growth in revenue and earnings;

- Has potential to generate attractive returns on invested capital, with incremental investment opportunities that will allow the company to increase earnings;

- Has strong intellectual property, a defensible business model, a strong competitive position established customer relationships, and sustainable margins;

- Has potential to grow via add-on acquisitions or is viewed as an appropriate platform for a future roll-up strategy;

- Can benefit from expected consolidation within the cannabis industry;

- Can benefit from additional managerial guidance and strategic initiatives to reposition the company, accelerate growth or refocus the business on strategies that will result in value creation;

- Will be well received by financial markets as a public company; and

- Has the potential to generate risk-adjusted returns that are attractive for our stockholders.

19.     According to the IPO registration statement, Stable Road was required to acquire a target business with an aggregate fair market value of at least 80% of the net assets held in trust from the IPO proceeds and to do so within 18 months of the November 2019 IPO.  In the event Stable Road did not complete an initial business combination, the Company was obligated to redeem 100% of its outstanding public shares equal to the aggregate trust proceeds plus interest.  Moreover, shareholders could redeem their shares at the time of the initial business combination if they did not want to retain a continuing interest in the business after the transaction.  If enough shareholders redeemed their shares, a deal would not be economically feasible.

20.     However, if Stable Road was successful in completing an initial business combination within the allotted time frame, the Sponsor and various Company insiders would be richly rewarded.  Specifically, Stable Road had issued founder shares to the Sponsor in connection with the IPO equal to approximately 20% of the Company's outstanding common shares after the IPO, which the Sponsor held for the benefit of Defendant Kabot, Defendant Norris, and other Company insiders.  The founder shares were valued in the proxy materials for a merger at $55 million as of April 5, 2021, with the founder shares held by Defendant Kabot valued at $5.7 million and the founder shares held by Defendant Norris valued at $1 million as of this date.  These shares would expire worthless if the Company failed to complete its initial business combination.  As a result, Defendants were highly incentivized to complete an initial business combination

and to convince shareholders to approve a merger within the allotted time frame.

21.   Momentus is a private company that purports to operate in the commercial space industry.

## MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSION ISSUED DURING THE CLASS PERIOD

22.   The Class Period begins on October 7, 2020.  On that date, Stable Road and Momentus issued a joint press release announcing that the Company had agreed to acquire Momentus in a proposed merger, subject to shareholder approval (the "Merger"). Although outside of Stable Road's claimed target industry, the press release stated that the Merger would "create the first publicly traded space infrastructure company at the forefront of the new space economy."  The release also stated that "[i]n 2019, the Company successfully tested its water plasma propulsion technology in space."  The release quoted Defendants Kokorich and Kabot regarding the Merger, stating in pertinent part as follows:

> "Momentus is at the forefront of the new space economy and is poised to capitalize on the significant growth opportunity as a first mover; we believe in a future where humanity is equipped with all it needs to flourish throughout the solar system," said Mikhail Kokorich, Founder & Chief Executive Officer of Momentus. "Our mission is to provide the infrastructure services that support all industry beyond Earth. The technologies we've developed or built upon, including our groundbreaking water plasma propulsion, will support growing demand from the booming satellite industry with affordable, versatile and low risk transportation and infrastructure services across private companies, government agencies, and research organizations. We expect to deploy the proceeds of this transaction to support our rapid growth and operations, and to support our capital needs as we ramp up revenues. We are excited to partner with the Stable Road

8

team and look forward to leveraging their capital markets expertise."

Brian Kabot, Chairman & Chief Executive Officer of Stable Road added, "We set out to identify a disruptive company and Momentus was the most unique and compelling opportunity to create value through our investment, as we believe the Company is primed to be a leader in the rapidly growing new space economy. As the only public, pure-play commercial space company capable of revolutionizing space infrastructure, Momentus is poised to capitalize on its market-defining position. We are excited to partner with Momentus as the Company develops its technology portfolio, continues to leverage deep customer relationships across diverse private and public sector applications, and expands its experienced leadership team."

23. Also on October 7, 2020, Defendant Kabot appeared on *CNBC* to promote the Merger. In an interview, Defendant Kabot stated:

We have a, we had a very successful test launch, the vehicle is still flying around in space, which is great. Our first commercial launch will be in December 2020 with Space. We have a pretty full vehicle of satellites to deliver. And then we have a phenomenal launch cadence for 2021 going up with SpaceX in February, June, and December 2021. We actually have one and a half vehicles already booked for December 2021. So pretty aggressive launch cadence with SpaceX.

24. On October 13, 2020, Stable Road filed with the SEC on Form 8-K an investor presentation regarding the Merger. The investor presentation stated that Momentus had an enterprise value of $1.2 billion and stated that its "Groundbreaking Water Propulsion Technology" had been "[s]uccessfully tested . . . on a demo flight launched mid-2019." The investor presentation also highlighted the "Exceptional Team" at Momentus led by the company's "Visionary Founder," Defendant Kokorich.

25. On November 2, 2020, Stable Road filed with the SEC a registration statement on Form S-4 for shares to be issued in the Merger, which was signed by

Defendants Kabot and Norris, among others ("Registration Statement"). The Registration Statement highlighted Momentus's "Valuable Intellectual Property," and stated in pertinent part: "Since its founding in 2017, Momentus has developed a portfolio of technologies, including its cornerstone water plasma propulsion technology, which it successfully tested in space in 2019." The Registration Statement also represented that Momentus was on track to achieve $19 million in revenues during 2021, which was expected to rise to $152 million in revenues by 2022 and over $4 billion in revenues by 2027. Furthermore, although the Registration Statement stated that Momentus was considered a "foreign person" by The Committee on Foreign Investment in the United States ("CFIUS") and thus subject to a national security review, it omitted any disclosure that Defendant Kokorich himself was considered by U.S. government officials to pose a serious national security threat, thereby jeopardizing Momentus's launch schedule and undermining its revenue projections.

26.   The statements referenced in ¶¶22-25 above were materially false and misleading when made because they misrepresented and failed to disclose the adverse facts about Momentus's business, operations, and prospects and Stable Road's due diligence activities in connection with the Merger, which were known to Defendants or recklessly disregarded by them, as follows: (i) that Momentus's 2019 test of its key technology, a water plasma thruster, had failed to meet Momentus's own public and internal pre-launch criteria for success, and was conducted on a prototype that was not

designed to generate commercially significant amounts of thrust; (ii) that the U.S. government had conveyed that it considered the CEO of Momentus, Defendant Kokorich, a national security threat, which jeopardized Defendant Kokorich's continued leadership of Momentus and Momentus's launch schedule and business prospects; (iii) that, as a result of (a) and (b) above, the revenue projections and business and operational plans provided to investors regarding Momentus and the commercial viability and timeline of its products were materially false and misleading and lacked a reasonable basis in fact; and (iv) that Stable Road had failed to conduct appropriate due diligence of Momentus and its business operations and Defendants had materially misrepresented the due diligence activities being conducted by the Sponsor and Stable Road executives in connection with the Merger.

### The Truth Begins To Emerge

27.    On January 25, 2021, Momentus announced that Defendant Kokorich had resigned his position as CEO of Momentus "in an effort to expedite the resolution of U.S. government national security and foreign ownership concerns surrounding the Company."

28.    On this news, the price of Stable Road securities plummeted.  Over three trading days, the price of Stable Road Class A stock fell $4.75, or 19%, to close at $20.10 per share on January 27, 2021.  However, because the truth regarding Stable Road's due diligence activities and the commercial viability of Momentus products and

11

its expected revenues remained concealed by Defendants, the price of Stable Road securities remained artificially inflated.

## **The Truth Fully Emerges**

29.   On July 13, 2021, the SEC announced charges against Stable Road, the Sponsor, Momentus, Defendant Kabot and Defendant Kokorich for making "misleading claims about Momentus's technology and about national security risks associated with Kokorich."  The release stated that all parties other than Defendant Kokorich had settled the charges against them for $8 million in total, while the case against Defendant Kokorich continued.  The release stated in pertinent part as follows:

> According to the SEC's settled order, Kokorich and Momentus, an early-stage space transportation company, repeatedly told investors that it had "successfully tested" its propulsion technology in space when, in fact, the company's only in-space test had failed to achieve its primary mission objectives or demonstrate the technology's commercial viability. The order finds that Momentus and Kokorich also misrepresented the extent to which national security concerns involving Kokorich undermined Momentus's ability to secure required governmental licenses essential to its operations. In addition, the order finds that Stable Road repeated Momentus's misleading statements in public filings associated with the proposed merger and failed its due diligence obligations to investors. According to the order, while Stable Road claimed to have conducted extensive due diligence of Momentus, it never reviewed the results of Momentus's in-space test or received sufficient documents relevant to assessing the national security risks posed by Kokorich. The order finds that Kabot participated in Stable Road's inadequate due diligence and in filing its inaccurate registration statements and proxy solicitations. The SEC's complaint against Kokorich includes factual allegations that are consistent with the findings in the order.

30.   Also on July 13, 2021, the SEC publicized a cease-and-desist order ("Order") and complaint against Defendant Kokorich which detailed Defendants'

scheme to defraud investors in connection with the Merger.   The Order stated in

pertinent part as follows:

3.   Momentus's business plans and multi-billion dollar revenue projections, as provided to PIPE investors and described in SRAC's Form S-4 registration statement/proxy statement filed in connection with the anticipated merger, were premised on Momentus's development of commercially viable technology that it could employ to provide commercial space services to customers in the near-term on U.S.-based launches.

4.   Momentus and Kokorich misled SRAC's investors, including the PIPE investors, in two key respects. First, Momentus and SRAC both claimed that in 2019, Momentus had "successfully tested" in space its key technology, a microwave electro-thermal ("MET") water plasma thruster, that Momentus claimed was designed to move a satellite into custom orbit after launch. In fact, that 2019 test failed to meet Momentus's own public and internal pre-launch criteria for success, and was conducted on a prototype that was not designed to generate commercially significant amounts of thrust.

5.   Second, Kokorich and Momentus concealed and made false statements about U.S. government concerns with national security and foreign ownership risks posed by Kokorich, including concerns related to his affiliation with Momentus. Based on those concerns, U.S. government agencies had the functional authority to block Momentus's involvement in U.S. based launches, and in January 2021, Kokorich resigned his position as CEO as part of an effort to resolve the ongoing national security concerns. Up to at least that point, Momentus and SRAC had disclosed that Momentus could face CFIUS restrictions in future transactions as a result of Kokorich's status as a "foreign person," but investors lacked material information about the extent to which Kokorich's affiliation with Momentus jeopardized, among other things, the company's launch schedule and the revenue projections that were based in part on assumptions about the timing of its first commercial launch.

6.   SRAC's due diligence failures compounded Momentus's and Kokorich's misrepresentations and omissions and resulted in the dissemination of materially false and misleading information to investors. SRAC's due diligence of Momentus was conducted in a compressed

timeframe and unreasonably failed both to probe the basis of Momentus's claims that its technology had been "successfully tested" in space and to follow up on red flags concerning national security and foreign ownership risks. As a result, SRAC's public filings, including registration statements signed by Kabot, incorporated Momentus's and Kokorich's false and misleading claims and caused investors to be misled about material aspects of Momentus's business.

31.     On this news, the price of Stable Road securities plummeted.  On July 14, 2021, the price of Stable Road Class A stock fell $1.22 per share, or 10%, to close at $10.66 per share.

## ADDITIONAL SCIENTER ALLEGATIONS

32.     As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company and Momentus were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. Defendants, by virtue of their receipt of information reflecting the true facts regarding Stable Road's due diligence activities and the technology possessed and national security concerns posed by Momentus, their control over, and/or receipt and/or modification of Stable Road's and Momentus's allegedly materially misleading misstatements and/or their associations with the Company and/or Momentus, which made them privy to confidential proprietary information concerning Stable Road and Momentus, participated

in the fraudulent scheme alleged herein.

33. The fraudulent scheme described herein could not have been perpetrated during the Class Period without the knowledge and complicity of, or at least the reckless disregard by, personnel at the highest levels of the Company and Momentus, including the Individual Defendants. Given their executive-level positions with Stable Road and/or Momentus, the Individual Defendants controlled the contents of Stable Road's and Momentus's public statements during the Class Period. The Individual Defendants were each provided with or had access to the information alleged herein to be false and/or misleading prior to or shortly after its issuance and had the ability and opportunity to prevent its issuance or cause it to be corrected. Because of their positions and access to material non-public information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations that were being made were false and misleading. As a result, each of the Individual Defendants was responsible for the accuracy of Stable Road's and Momentus's corporate statements and is, therefore, responsible and liable for the representations contained therein.

## LOSS CAUSATION

34. As detailed herein, during the Class Period, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Stable Road securities. This scheme operated as a fraud or deceit on Class Period

purchasers of Stable Road securities by failing to disclose and misrepresenting the adverse facts detailed herein.  When Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of Stable Road securities declined significantly as the prior artificial inflation came out of the price of Stable Road securities.

35.     By concealing from investors the adverse facts detailed herein, Defendants presented a misleading picture of Stable Road's due diligence activities and Momentus's business, prospects and operations.  Defendants' false and misleading statements had the intended effect and caused Stable Road securities to trade at artificially inflated levels throughout the Class Period, reaching as high as $29.18 per share of Class A common stock on February 10, 2021.  Following the adverse revelations detailed herein, the price Stable Road Class A common stock fell to a low of just $10.58 per share on July 14, 2021 – nearly **64% below** the Class Period high.  As a result of their purchases of Stable Road securities at artificially inflated prices during the Class Period, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws.

36.     When the truth about the Company was revealed to the market, the price of Stable Road securities fell significantly.  The decline removed the inflation from the price of Stable Road securities, causing real economic loss to investors who had purchased Stable Road securities during the Class Period.  The decline in the price of

16

Stable Road securities when the corrective disclosure came to light was a direct result of the nature and extent of Defendants' fraudulent misrepresentations being revealed to investors and the market.  The timing and magnitude of the price decline in Stable Road securities negate any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to Defendants' fraudulent conduct.

37.     The economic loss, *i.e.*, damages, suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the price of Stable Road securities and the subsequent significant decline in the value of Stable Road securities when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

<u>**APPLICABILITY OF PRESUMPTION OF RELIANCE:<br>FRAUD ON THE MARKET DOCTRINE**</u>

38.     At all relevant times, the market for Stable Road securities was an efficient market for the following reasons, among others:

(a)     Stable Road securities met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient, national stock market;

(b)     as a regulated issuer, Stable Road filed periodic public reports with the SEC and the NASDAQ;

(c)     Stable Road regularly communicated with public investors via established market communication mechanisms, including the regular dissemination of

press releases on national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    Stable Road was followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

39.    As a result of the foregoing, the market for Stable Road securities promptly digested current information regarding Stable Road from all publicly available sources and reflected such information in the price of Stable Road securities.  Under these circumstances, all purchasers of Stable Road securities during the Class Period suffered similar injury through their purchase of Stable Road securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

40.    The statutory safe harbor provided for forward-looking statements under the Private Securities Litigation Reform Act of 1995 does not apply to any of the allegedly false statements plead in this complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not adequately identified as "forward-looking statements" when made

and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.   Furthermore, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Stable Road who knew that the statement was false when made.

## CLASS ACTION ALLEGATIONS

41.   Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Stable Road securities during the Class Period; and were damaged upon the revelation of the alleged corrective disclosures.   Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

42.   The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, Stable Road securities were actively traded on the NASDAQ.   While the exact number of Class members is unknown to Plaintiff at

this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Stable Road or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

43.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

44.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

45.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Stable Road and Momentus;

- whether the Individual Defendants caused Stable Road to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Stable Road securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

46.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## <u>COUNT I</u>

**(For Violation of §10(b) of the Exchange Act and Rule l0b-5 Promulgated Thereunder Against All Defendants)**

47.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.    During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

21

49.     Defendants: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of Stable Road securities during the Class Period.

50.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Stable Road securities. Plaintiff and the Class would not have purchased Stable Road securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

51.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Stable Road securities during the Class Period.

## COUNT II

**(For Violation of §20(a) of the Exchange Act Against the Individual Defendants and the Sponsor)**

52.     Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

53.     The Individual Defendants and the Sponsor acted as controlling persons of Stable Road and Momentus within the meaning of §20(a) of the Exchange Act.

54.     By virtue of their positions as the Sponsor, the officers and/or directors of

Stable Road and Momentus, and/or their beneficial ownership of Stable Road and Momentus securities, the Sponsor and the Individual Defendants had the power and authority to, and did, cause Stable Road and Momentus to engage in the wrongful conduct alleged.

55. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Stable Road securities during the Class Period.

56. By reason of such conduct, Defendants are liable pursuant to §20(a) of the Exchange Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A. Designating Plaintiff as Lead Plaintiff and declaring this action to be a class action properly maintained pursuant to Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B. Awarding Plaintiff and other members of the Class damages together with interest thereon;

C. Awarding Plaintiff and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, expert fees, and other costs and disbursements; and

D. Awarding Plaintiff and other members of the Class such other and further

relief as the Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: August 4, 2021

Respectfully submitted,

POMERANTZ LLP

By: *s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (212) 661-8665
jpafiti@pomlaw.com

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiff*

24

Thursday, July 22, 2021

## Stable Road Acquisition Corp. (SRAC)

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.  I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Stable Road Acquisition Corp. ("Stable Road" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Stable Road securities at the direction of plaintiffs counsel, or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.  I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Stable Road securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  The attached sheet lists all of my transactions in Stable Road securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.  I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.  I declare under penalty of perjury that the foregoing is true and correct.

**Name**

**Print Name**
Drew DePoy

**Signature**

**Stable Road Acquisition Corp. (SRAC)**                                           **DePoy, Drew**

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 1/7/2021 | 160 | $15.5000 |
| Purchase | 2/4/2021 | 30 | $24.5000 |